UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
West Palm Beach Division
Case No.: 9:21-cv-80047-BER

SHEKEARA ADMORE,

    Plaintiff,
v.
HOSPICE OF PALM BEACH COUNTY, INC.,

    Defendant.
_____/

## COURT'S INSTRUCTIONS TO THE JURY

Members of the jury:

It's my duty to instruct you on the rules of law that you must use in deciding this case.

When I have finished you will go to the jury room and begin your discussions, sometimes called deliberations.

### Consideration of Direct and Circumstantial Evidence; Argument of Counsel; Comments by the Court
### (Eleventh Circuit Pattern Jury Instruction 3.3)

As I said before, you must consider only the evidence that I have admitted in the case. Evidence includes the testimony of witnesses and the exhibits admitted. But, anything the lawyers say is not evidence and isn't binding on you.

You shouldn't assume from anything I've said that I have any opinion about any factual issue in this case. Except for my instructions to you on the law, you should disregard anything I may have said during the trial in arriving at your own decision about the facts.

Your own recollection and interpretation of the evidence is what matters.

In considering the evidence you may use reasoning and common sense to make deductions and reach conclusions. You shouldn't be concerned about whether the evidence is direct or circumstantial.

"Direct evidence" is the testimony of a person who asserts that he or she has actual knowledge of a fact, such as an eyewitness.

"Circumstantial evidence" is proof of a chain of facts and circumstances that tend to prove or disprove a fact. There's no legal difference in the weight you may give to either direct or circumstantial evidence.

## Impeachment of Witnesses Because of Inconsistent Statements
## (Eleventh Circuit Pattern Jury Instruction 3.5.1)

You should also ask yourself whether there was evidence that a witness testified falsely about an important fact. And ask whether there was evidence that at some other time a witness said or did something, or didn't say or do something, that was different from the testimony the witness gave during this trial.

But keep in mind that a simple mistake doesn't mean a witness wasn't telling the truth as he or she remembers it. People naturally tend to forget some things or remember them inaccurately. So, if a witness misstated something, you must decide whether it was because of an innocent lapse in memory or an intentional deception. The significance of your decision may depend on whether the misstatement is about an important fact or about an unimportant detail.

## Responsibility for Proof – Plaintiff's Claim[s], Cross Claims, Counterclaims – Preponderance of the Evidence
### (Eleventh Circuit Pattern Jury Instruction 3.7.1)

In this case it is the responsibility of the Plaintiff, Shekeara Admore, to prove every essential part of her claims by a "preponderance of the evidence." This is sometimes called the "burden of proof" or the "burden of persuasion."

A "preponderance of the evidence" simply means an amount of evidence that is enough to persuade you that the Plaintiff's claim is more likely true than not true.

If the proof fails to establish any essential part of a claim or contention by a preponderance of the evidence, you should find against the Plaintiff.

When more than one claim is involved, you should consider each claim separately.

In deciding whether any fact has been proved by a preponderance of the evidence, you may consider the testimony of all of the witnesses, regardless of who may have called them, and all of the exhibits received in evidence, regardless of who may have produced them.

If the proof fails to establish any essential part of the Plaintiff's claims by a preponderance of the evidence, you should find for the Defendant, Hospice of Palm Beach County, Inc. as to that claim.

## Fair Credit Reporting Act

The Fair Credit Reporting Act (FCRA) applies when an employer wants to obtain a consumer report about a perspective employee. Before procuring a consumer report for employment purposes, the employer must make a clear and conspicuous disclosure that it plans to obtain a consumer report for employment purposes in writing. The disclosure must be made in a document that consisted solely of that disclosure. The employer also must obtain the prospective employee's authorization in writing.

Ms. Admore alleges that Hospice negligently violated the FCRA because the form Hospice used to notify Ms. Admore that it was going to get a consumer report about her did not consist of a clear and conspicuous disclosure in a stand-alone document.

On this claim, Ms. Admore must prove each of the following elements by a preponderance of the evidence:

First, Hospice procured a consumer report about her;

Second, the consumer report was obtained for employment purposes;

Third, Hospice's disclosure form did not consist of a clear and conspicuous disclosure in a stand-alone document;

Fourth, Hospice acted negligently;

Fifth, Hospice's use of a non-compliant disclosure form proximately caused actual damages to Ms. Admore.

## Definition of "Consumer Report"

A "consumer report" ~~generally~~ means any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for ~~(1) credit or insurance to be used primarily for personal, family, or household purposes; or (2)~~ employment purposes.

## Definition of "Employment Purposes"

"Employment purposes," when used in connection with a consumer report, means a report used for the purpose of evaluating a person for employment, promotion, reassignment or retention as an employee.

## Actual Damages Under The FCRA

"Actual damages" is an amount of money meant to fairly compensate a person for a legal injury, and can consist of one or more of the following:

Economic Loss. This type of actual damages may consist of lost wages or benefits or out-of-pocket monetary losses.

~~Harm to Reputation. This type of actual damages consists of harm to the plaintiff's reputation and/or good name.~~

~~Emotional Distress. This type of actual damages consists of any humiliation, embarrassment, mental anguish, and/or stress-related suffering.~~

## Affirmative Defense – Statute Of Limitations

Hospice claims that Ms. Admore's FCRA claim is barred by the statute of limitations, which is a time limit for bringing a claim. Hospice bears the burden of proving this defense by a preponderance of the evidence.

You only need to consider this defense if you already found that Ms. Admore has proven each of the elements of her FCRA claim as I have explained them above. Put differently, if you have found that Ms. Admore failed to prove one or more of the elements of her FCRA claim, you do not need to consider Hospice's statute of limitations defense.

To establish that the statute of limitations bars Ms. Admore's claim, Hospice must prove by a preponderance of the evidence that Ms. Admore failed to file her lawsuit within two years after she knew or, in the exercise of reasonable diligence, should have known that Hospice obtained a consumer report about her for employment purposes.

*prove that an employer had a discriminatory motive or intent in interfering with her FMLA rights.*[3]

To succeed on her claim against Hospice, Ms. Admore must prove each of the following elements by a preponderance of the evidence:

First: Ms. Admore was eligible for FMLA leave;

Second: Ms. Admore was entitled to FMLA leave;

Third: Ms. Admore gave Hospice proper notice of her need for leave; and

Fourth: Hospice interfered with Ms. Admore's rights by *requiring her to take continuous leave under the FMLA when she only requested intermittent leave and* not r*restoring* her to the same or a similar [equivalent] position.

In the verdict form that I will explain in a moment, you will be asked to answer questions about these factual issues.

For the first element, Plaintiff was "eligible" for FMLA leave if:

(a) Ms. Admore worked for Hospice for at least 12 months before the date any FMLA leave was to begin, and

(b) Ms. Admore worked for Hospice for at least 1,250 hours during the 12-month period before the date any FMLA leave was to begin.

For the second element, Plaintiff was "entitled" to FMLA leave if she had an FMLA-qualifying reason. A serious health condition that prevented Plaintiff from performing the functions of her job is an "FMLA-qualifying reason."

A "serious health condition" is an illness, injury, impairment, or physical or mental condition that involves either inpatient care in a hospital, hospice, or

---

[3] *Krutzig v. Pulte Home Corp., 602 F.3d 1231, 1236 (11th Cir. 2010).*

19

## Affirmative Defense of Justification

If you find that Plaintiff has proved each element of her FMLA interference claim, you must then decide whether Hospice has established, by a preponderance of the evidence, the affirmative defense that it was justified in not restoring Ms. Admore to the same or similar [equivalent] position after her FMLA leave.

It is lawful for an employer to reinstate an employee to a position that is different than the one she held prior to taking FMLA leave or to separate an employee's employment for reasons unrelated to an employee's FMLA leave. To establish this affirmative defense, Hospice must prove by a preponderance of the evidence that **any** ~~adjustment~~ *changes* **to Plaintiff's job duties were for reasons that were unrelated to Plaintiff's FMLA leave.**~~, in this case a change in Hospice's need for employees to provide coverage due to the effects of the COVID-19 pandemic,~~ *~~to take effect on the day Ms. Admore returned to work.~~* Put another way, Hospice must prove that it would have taken the same actions as those it took with respect to Plaintiff's *~~job~~* **assignment** employment ~~when she returned from leave even~~ without the FMLA leave.

**Plaintiff is not entitled to FMLA benefits or protections if she fraudulently obtained FMLA leave.**

## FMLA – Retaliation Claims – 29 U.S.C. §§ 2601-2654
### (Eleventh Circuit Pattern Jury Instruction 4.15)

Ms. Admore separately claims that Hospice retaliated against her because she took FMLA leave. It is unlawful for an employer to take adverse action against an employee because the employee exercises her FMLA rights.

To succeed on her retaliation claim against Hospice, Ms. Admore must prove each of the following facts by a preponderance of the evidence:

First: Plaintiff was employed by Hospice;

Second: Plaintiff was eligible for FMLA leave;

Third: Plaintiff was entitled to FMLA leave;

Fourth: Plaintiff lawfully took FMLA leave;

Fifth: Hospice changed Ms. Admore's job duties and/or terminated her employment:

Sixth: Hospice's actions were an "adverse employment action" against Ms. Admore, and

Seventh: Hospice took this adverse employment action because of Ms. Admore's exercise of her FMLA rights.

In the verdict form that I will explain in a moment, you will be asked to answer questions about these factual issues.

The parties have agreed that Plaintiff was employed by Hospice. You should consider that a proven fact.

You should follow the same instructions I previously gave about the second and third elements -- eligibility and entitlement.

An employer may not take an adverse action against an employee because of the employee's FMLA-protected activity. But an employer may separate the employment of an employee for any other reason, good or bad, fair or unfair.

If you believe Hospice's reasons for its decision, and you find that Hospice did not make its decision because of Plaintiff's FMLA-protected activity, you must not second guess that decision, and you must not substitute your own judgment for Hospice's judgment – even if you do not agree with it.

~~However, As I have explained, Ms. Admore has the burden to prove that Hospice's decisions to (1) change her job duties and responsibilities upon return from her FMLA leave or (2) terminate Ms. Admore's employment was because of Ms. Admore's FMLA-protected activity. I have explained to you that evidence can be direct or circumstantial. To decide whether Hospice's decisions to (1) change her job duties and responsibilities upon return from her FMLA leave and (2) terminate Ms. Admore's employment termination was because of her FMLA-protected activity, you may consider the circumstances of Hospice's decisions. For example, you may consider whether you believe the reasons that Hospice gave for the decisions. If you do not believe the reasons that it gave for the decisions, you may consider whether the reasons were so unbelievable that they were a cover-up to hide the true retaliatory reasons for the decisions.~~

If you find that Ms. Admore has proved each element of FMLA retaliation, you must decide the issue of her damages.

## FMLA Retaliation Damages

When considering the issue of compensatory damages for FMLA retaliaion, you should determine what amount, if any, has been proven by Ms. Admore by a preponderance of the evidence as full, just and reasonable compensation for all of her damages as a result of Hospice's alleged retaliation, no more and no less. Compensatory damages are not allowed as a punishment and must not be imposed or increased to penalize Hospice. Also, compensatory damages must not be based on speculation or guesswork.[5]

If Plaintiff proved that she lost wages or benefits because of Hospice's FMLA violation, then Plaintiff may recover net lost wages and benefits from the date *Hospice first retaliated against Ms. Admore* **of her separation, June 30, 2020,** to the date of your verdict **subject to any finding of mitigation.**

---

[5] **Hospice moves for the Court to decide any entitlement or amount of front pay depending on the jury's rulings as to liability.** *Dotson v. Pfizer, Inc.*, **558 F.3d 284, 300 (4th Cir. 2009) ("Determinations of front pay are made by the trial court sitting in equity.")** *See* **29 U.S.C. § 2617(B) (equitable issues such as reinstatement and front pay should be decided by the court).**

27

### Duty to Deliberate When Only the Plaintiff Claims Damage
### (Eleventh Circuit Pattern Jury Instruction 3.8.1)

Of course, the fact that I have given you instructions concerning the issue of Plaintiff's damages should not be interpreted in any way as an indication that I believe that the Plaintiff should, or should not, prevail in this case.

Your verdict must be unanimous – in other words, you must all agree. Your deliberations are secret, and you'll never have to explain your verdict to anyone.

Each of you must decide the case for yourself, but only after fully considering the evidence with the other jurors. So you must discuss the case with one another and try to reach an agreement. While you're discussing the case, don't hesitate to reexamine your own opinion and change your mind if you become convinced that you were wrong. But don't give up your honest beliefs just because others think differently or because you simply want to get the case over with.

Remember that, in a very real way, you're judges – judges of the facts. Your only interest is to seek the truth from the evidence in the case.

in the jury room and not be shared with anyone, including me, in your note or question.